# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        Plaintiff,

     v.                                           Case No. 05-CR-22

**ROBERT WACHOWIAK, JR.**
        Defendant.

---

## SENTENCING MEMORANDUM

Defendant Robert Wachowiak, Jr. was a twenty-four year old music student at the University of Wisconsin-Milwaukee ("UWM") when, on December 20, 2004, FBI agents executed a search warrant at his home and seized his computer, which contained hundreds of images of child pornography. An agent in Florida had discovered defendant's pornography collection through a peer to peer file sharing network using "Limewire," a software program.

Defendant was indicted and pleaded guilty to receiving child pornography, contrary to 18 U.S.C. § 2252(a)(2), which carries a penalty range of five to twenty years in prison. The probation office prepared a pre-sentence report ("PSR"), which calculated defendant's offense level as 32 (base level 22, U.S.S.G. § 2G2.2(a)(2), plus 2 because the material involved pre-pubescent minors, § 2G2.2(b)(2), plus 4 because the material involved sadistic or masochistic conduct or other depictions of violence, § 2G2.2(b)(4), plus 2 because the offense involved use of a computer, § 2G2.2(b)(6), plus 5 based on 600 or more images, and minus 3 for acceptance of responsibility, § 3E1.1) and his criminal history category as I, producing an imprisonment range of 121-151 months under the

advisory sentencing guidelines. Neither party objected to the PSR, but defendant requested a non-guideline sentence of 60 months, the statutory mandatory minimum. The government argued for a guideline sentence. In this memorandum, I set forth more fully the reasons for the sentence imposed.

## I. SECTION 3553(a)

In imposing sentence, I am guided by the factors set forth in 18 U.S.C. § 3553(a), which include:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the advisory guideline range;

(5)   any pertinent policy statements issued by the Sentencing Commission;

(6)   the need to avoid unwarranted sentence disparities; and

(7)   the need to provide restitution to any victims of the offense.

After considering these factors, the statute directs me to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in sub-section (2). 18 U.S.C. § 3553(a).

2

## II. CONSIDERATION OF FACTORS

A. **Nature of Offense**

There can be no doubt that possessing child pornography is a very serious crime, and defendant's offense involved a large number of images, some of which depicted pre-pubescent children and sadistic conduct.[1] These were aggravating factors.

However, there was no evidence that defendant possessed the material in order to entice a child, that he produced any of the images, or that he purposely distributed them (though he did make them available to others through the file sharing program). Nor was there any indication of improper contact with an actual child. The PSR identified several of the victims depicted in the images, and I received a statement from the mother of one of them, which detailed the severe harm caused her daughter.

As noted, defendant came to the attention of law enforcement when the FBI accessed his computer through a file sharing program. Defendant was extremely cooperative, voluntarily accompanied the FBI agents to their offices and provided a detailed confession.

B. **Character of Defendant**

At the time of sentencing, defendant was twenty-five years old and had no prior record, adult or juvenile. After his arrest and indictment, he remained free on bond for more than a year and was compliant with his conditions of release, with negative drug tests.

---

[1] According to the PSR, at least nine of the images involved bondage.

3

Defendant was an honor role student at Thomas More High School, then enrolled at UWM with plans of becoming a music teacher. A talented musician, he frequently accompanied others and played at events, and taught piano to children from September 1997 until his arrest in December 2004. He was employed as a liturgical musician at St. Robert's Church from October 24, 2001 to August 15, 2004, and at St. Veronica's from September 2004 to January 2005, when he resigned following his arrest. Following his indictment, he got a job as a bakery clerk at Sendik's Grocery Store. All of defendant's employers thought highly of him.

It appeared that this offense stemmed from an obsession with pornography that began when defendant was around eight years old, when he began watching the Spice Channel on TV. He began watching his father's pornographic videos at age twelve. In the eighth grade he obtained a VCR and would stay up all night watching pornographic videos. At age eighteen, he began to obtain pornography on the internet, which progressed to the downloading and sharing of child pornography, which appeared to have occurred from about April 2003 to December 2004.

Defendant tried to deal with his problem with pornography but was unsuccessful prior to his arrest. He deleted his collection in March 2004 but then relapsed and retrieved more. He deleted his collection again in December 2004 but reinstalled the Limewire program on December 18, 2004, two days before his arrest. Defendant saw a psychologist at UWM, Dr. Karin Ringler, from October 28, 2004 to December 17, 2004 to discuss relationship issues and the divorce of his parents. He mentioned looking at "pictures" but did not disclose that they depicted children. At their last session, defendant reported feeling better and stated that he did not need additional counseling. Obviously, he was

4

wrong. The warrant was executed three days later, and the FBI found hundreds of images of child pornography.

Defendant returned to Dr. Ringler for three sessions from January 11, 2005 to January 19, 2005, advised her of his arrest, and obtained a referral to Roger Northway, M.S., a specialist in sex offenses, with whom he then commenced treatment. Dr. Ringler reported that defendant was motivated, recommended that he continue in treatment, and opined that a long prison sentence would harm his chances for a successful recovery.

Mr. Northway provided a report which indicated that defendant arrived on time for all appointments and was straightforward in his comments. He also stated that defendant was motivated to change, and he saw defendant as an appropriate candidate for community supervision. He considered it imperative that treatment be included as part of the sentence.

In support of his opinion, Northway evaluated defendant using five different risk assessment tools. According to the "Risk Checklist for Offenders," defendant had twenty-eight low risk characteristics and three high risk characteristics, which put him in the lowest risk category overall. According to the "Sex Offender Evaluation of Dangerousness," defendant scored a twenty-three, again placing him in the lowest risk category. Defendant also completed the Vermont Assessment for Sexual Offender Risk, which has a Re-offense Scale and a Violence Scale, and scored in the lowest category on each, making his overall risk level significantly in the low risk category. Defendant was also found to be in the lowest risk category on the Sex Offender Needs Assessment Rating and Static 99 instruments. According to

Northway, individuals in that category on the Static 99 have a 9% chance of recidivism in five years, 13% in 10 years, and 16% in 15 years.[2]

Defendant was also evaluated by Dr. Patricia Coffey, who similarly found him to be a relatively low risk of direct contact sexual offending behavior and an excellent community treatment candidate. She stated that he was very open and willing to discuss information that was not favorable, and was motivated to change. She opined that treatment, including use of a polygraph to monitor compliance, combined with strict monitoring of computer use and access to children, would provide the most effective strategy for reducing his already low risk to the community. Dr. Coffey noted that like many who started their sexual experiences with pornography, defendant became compulsive and used pornography to deal with stress.[3]

Defendant's progress in treatment was reflected in his allocution, which displayed genuine remorse and insight into his behavior. He realized the harm caused children who were victimized in order to produce pornography. He stated that he understood the impact of his "selfish fantasies" on the victims and expressed sadness about children victimized to "fulfill . . . sick desires."

---

[2]Mr. Northway was a licensed professional counselor and certified sex therapist specializing in sexual dysfunction and addiction, and thus was well-qualified to render these opinions.

[3]Dr. Coffey was a licensed psychologist, with particular expertise in sex offender issues. In addition to a private practice, she worked with the State of Wisconsin conducting sexual predator evaluations under Chapter 980 of the Wisconsin Statutes. She, too, was well-qualified to render opinions on this subject based on her training and experience.

6

Defendant also had strong support from family, friends and colleagues, which would assist in his rehabilitation. A professor from UWM attested to defendant's character and talent, and his hard-working and giving nature. His aunt, a teacher, also attested to his talent and helpfulness. His mother explained that he was never in trouble as a child, displayed excellent manners, and was a giving person. A friend from UWM also certified defendant's talent and giving nature. His girlfriend and, significantly, her mother continued to support him. His girlfriend indicated that since entering therapy he had become more open and was determined to get better, and they planned to marry. Letters from defendant's grandmother and another aunt were to the same effect.

In sum, defendant's character was excellent, and he was making every effort to combat his addiction to pornography and remain crime free.

**C.     Consideration of Guidelines and Purposes of Sentencing**

The guidelines called for a prison term of 121-151 months, but under the circumstances of this case that range was greater than necessary to satisfy the purposes of sentencing under § 3553(a)(2).

First, I found that a sentence below the range was sufficient to provide just punishment and promote respect for the law. See 18 U.S.C. § 3353(a)(2)(A). A sentence of ten years or more for a first time offender under the circumstances of this case was greater than necessary to accomplish this purpose. A sentence exceeding five years was a substantial penalty, sufficient to satisfy the public's interest in punishment.

Second, a sentence exceeding ten years was greater than necessary to deter others who might engage in similar conduct. See § 3553(a)(2)(B). Prior to sentencing, both sides

7

presented information on the sentences imposed in similar cases in Wisconsin,[4] which demonstrated that the guideline sentence in the present case was far longer than that typically imposed on defendants who engaged in this type of conduct, in both federal and state court. A sentence exceeding five years would deter others considering receiving this type of material.

Third, a sentence exceeding ten years was greater than necessary to protect the public from further crimes defendant might commit. See § 3553(a)(2)(C). According to all of the professionals who evaluated defendant, he was a low risk of re-offending and a good candidate for community supervision. The record supported their findings. Defendant worked with children as a piano teacher for many years, and there was no suggestion of improper conduct. Likewise, defendant's sister, who had an eleven year old daughter, reported no problems.[5] Moreover, defendant's motivation and progress in treatment demonstrated a reduced risk to the public.

The government argued that defendant was in counseling before he was indicted, did not disclose his viewing of child pornography, and stopped seeing the counselor when he believed he was cured. I agreed that, given this history, defendant's progress in treatment did not support a sentence served entirely or even mostly in the community. A substantial period of confinement was necessary. However, defendant's progress in treatment was certainly relevant to determining the length of the prison sentence necessary

---

[4] As I discuss later in this memorandum, defendant requested a sentence below the guideline range in part to account for the disparity between state and federal child pornography sentences.

[5] Nevertheless, in order to ensure the protection of the public, I included conditions of strict monitoring as part of defendant's supervised release.

8

to protect the public. It also appeared that defendant's arrest was a significant motivating factor in that treatment.

Fourth, according to all of the experts, a sentence exceeding ten years would have harmed defendant's progress in treatment. See § 3553(a)(2)(D). Dr. Ringler stated that a long prison term would decrease defendant's chances for a successful recovery, and both Dr. Coffey and Mr. Northway strongly recommended treatment and stated that defendant was a good candidate for community supervision. The BOP offers a sex offender treatment program at FCI-Butner, but the admission criteria provide that the inmate must have a maximum of 36 months left on his sentence, and a minimum of 18 months from the date of arrival at Butner, in order to commence treatment. The program is generally 18 months long and occurs at the end of the inmate's sentence. Thus, a sentence approaching ten years would only have delayed the treatment available within the BOP, in addition to disrupting defendant's treatment in the community. It was also my understanding that space in the Butner program is limited, and many inmates never get in. Thus, defendant could be denied treatment for the entire prison sentence. See Celia M. Rumann & Jon M. Sands, Lost in Incarceration: The Native American Advisory Group's Suggested Treatment for Sex Offenders, 16 FED. SENT'G REP. 208 (Feb. 2004).

In addition to producing a sentence greater than necessary to satisfy the purposes of sentencing, the guidelines also failed to take into account several important factors in the present case. First, the guidelines failed to consider defendant's otherwise outstanding character, as depicted in the many supportive letters discussed above. As I have noted in previous cases, while § 3553(a)(1) requires the court to consider the character of the defendant, the guidelines account only for criminal history. In cases where the defendant

9

led an otherwise praiseworthy life, the court should consider a sentence below the advisory range.  See, e.g., United States v. Page, No. 04-CR-106, 2005 U.S. Dist. LEXIS 19152, at *12 (E.D. Wis. Aug. 25, 2005); United States v. Ranum, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005).  In the present case, the record demonstrated that defendant was a kind, caring individual, who enjoyed the broad support of family, friends, colleagues and teachers.  Likewise, the guidelines failed to account for defendant's sincere efforts in treatment, which not only reduced his chances of re-offending but also demonstrated a strength of character in confronting his problems.  See United States v. Rutherford, 323 F. Supp. 2d 911 (E.D. Wis. 2004) (departing based on the defendant's efforts at self-improvement and reformation, including drug treatment); United States v. Lange, 241 F. Supp. 2d 907 (E.D. Wis. 2003) (departing based on successful drug treatment).

Second, even though he received a 3 level reduction under U.S.S.G. § 3E1.1, the guideline range did not sufficiently account for defendant's sincere expression of remorse and demonstration of insight into his condition and the harm he was causing children.  See United States v. Milne, 384 F. Supp. 2d 1309, 1312 (E.D. Wis. 2005) (explaining that the 3 level reduction is ordinarily granted to defendants who timely plead guilty, and the guidelines do not otherwise account for greater expressions of remorse).  Again, this reflects not only a reduced risk of re-offending but also positive character development.

Third, the guidelines failed to account for the significant collateral consequences defendant suffered as a result of his conviction.  His future career as a teacher was ruined, and he was compelled to resign as piano teacher of children and as a church musician.  He will also be forced to live with the stigma of being a convicted sex offender.  See United States v. Samaras, 390 F. Supp. 2d 805, 809 (E.D. Wis. 2005) (imposing non-guideline

10

sentence in part because, as a consequence of his conviction and sentence, defendant lost a good public sector job, a factor not considered by the guidelines); see also United States v. Redemann, 295 F. Supp. 2d 887, 894-97 (E.D. Wis. 2003) (departing downward where defendant suffered serious collateral consequences from conviction).

Fourth, the guidelines failed to account for the strong family support defendant enjoyed, which would aid in his rehabilitation and re-integration into the community. Because defendant's family and friends have not shunned him despite learning of his crime, he will likely not feel compelled to remain secretive if tempted to re-offend. Rather, he will seek help and support.[6]

For all of these reasons, a sentence below the range was warranted.

**D.    Consideration of Statutory Range and Imposition of Sentence**

The statute of conviction required a sentence of five to twenty years in this case, and defendant requested a sentence at the mandatory minimum. As the Seventh Circuit has noted in post-Booker cases, it is appropriate to consider where the defendant falls within the statutory range as well as the guideline range, and the district court should generally reserve sentences at or near the statutory maximum for the worst offenders. This is in keeping with the goal of proportionality in sentencing, which in part motivated Congress to pass the Sentencing Reform Act, and which was recognized and supported by the remedial majority in Booker. United States v. Lister, 432 F.3d 754, 762 (7th Cir. 2005); see also United States v. Newsom, 402 F.3d 780, 785-86 (7th Cir. 2005). It follows

---

[6]Finally, I noted that the probation office had recommended a sentence significantly below the guideline range, which was unusual. I considered that recommendation, but, for the reasons stated in the text, would have imposed the same sentence even if the probation office had recommended a guideline sentence.

11

from this principle that the minimum statutory sentence should also be reserved for the least culpable.

In the present case, there were significant mitigating factors warranting a sentence below the guideline range, as discussed above. However, the presence of aggravating factors – the number of images, the involvement of very young children, and the depiction of sadistic conduct – weighed against a sentence at the very bottom of the statutory range. I also considered the victim impact statement in making this determination. In order to properly account for these factors, I concluded that a sentence of 70 months was sufficient but not greater than necessary.

**E.   Disparity**

As noted, the parties submitted evidence on the sentences received by other sex offenders in federal and state court in Wisconsin, and debated whether I could consider state-federal disparity in sentences for possession of child pornography. Defendant's evidence showed that offenders prosecuted in Wisconsin state courts usually receive probation with some condition time in jail, rather than lengthy prison terms. The government argued that this was an impermissible factor and presented evidence that the state of Wisconsin was considering toughening its child pornography sentences, including the enactment of mandatory minimums. The government also presented evidence of the federal sentences handed down for similar offenses in this district over the past several years.[7]

---

[7]As defendant noted, some of these cases involved actual contact with a child.

Section § 3553(a)(6), which advises courts to avoid unwarranted disparity among defendants with similar records who have been found guilty of similar conduct, does not specify whether it refers only to federal defendants or all defendants, state and federal. While the Seventh Circuit forbid departures on this basis before Booker, United States v. Schulte, 144 F.3d 1107, 1111 (7th Cir. 1998), it has not yet decided whether this is a proper sentencing factor post-Booker.  In United States v. Newsome, 428 F.3d 685, 688 (7th Cir. 2005), the court did note that "comparison of sentences has become a permissible part of the overall sentencing determination" after Booker.  However, the court there was not talking about comparisons between state and federal sentences but only federal cases. The Fourth Circuit has recently held that consideration of this factor is generally, though not always, impermissible. United States v. Clark, No. 05-4274, 2006 U.S. App. LEXIS 684 (4th Cir. Jan. 12, 2006).  The First Circuit ducked the issue in United States v. Wilkerson, 411 F.3d 1, 10 n.* (1st Cir. 2005), and the Eighth Circuit in United States v. Winters, 416 F.3d 856 (8th Cir. 2005) affirmed a sentence where the district judge considered the potential state sentence for the crime, over Judge Heaney's dissent, id. at 863.  The district courts appear to be split. Compare United States v. Santiago, No. 3:02CR162, 2005 U.S. Dist. LEXIS 35766, at *3-4 (D. Conn. Dec. 8, 2005) (cannot consider), with United States v. Habbal, No. 01:05cr083, 2005 U.S. Dist. LEXIS 25626, at *15-16 (E.D. Va. Oct. 17, 2005) (citing United States v. Lucania, 379 F. Supp. 2d 288, 296-97 (E.D.N.Y. 2005)) (can consider).

    I had some concerns about relying on this factor.  It appeared that Congress was most concerned about federal disparity in enacting the Sentencing Reform Act, see Schulte, 114 F.3d at 1111, and, as a general matter, different sovereigns should be able

13

to handle crimes differently, see Heath v. Alabama, 474 U.S. 82 (1985); Abbate v. United States, 359 U.S. 187 (1959). However, because I based the sentence on the § 3553(a) factors discussed above, I did not have to decide the issue. I did not consider the disparity between state and federal child pornography sentences in imposing the sentence in this particular case, though I assumed that in an appropriate case I possessed the discretion to do so.[8]

Finally, although the sentence varied from the guidelines, it did not create unwarranted disparity among federal offenders. The sentence was supported by the particular facts of the case discussed above, which fully justified the variance from the advisory range.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for a period of 70 months. Upon release, I ordered that he serve the maximum supervised

---

[8]In a pre-Booker article, Professor O'Hear discussed the propriety of departing based on state-federal disparity. Michael M. O'Hear, National Uniformity/Local Uniformity: Reconsidering the Use of Departures To Reduce Federal-State Sentencing Disparities, 87 Iowa L. Rev. 721 (Jan. 2002). Prof. O'Hear suggested that courts consider the following criteria in deciding whether to depart: (1) whether there is a state crime identical to the federal offense, (2) whether the case is subject to effective prosecution in state court, (3) whether the bottom of the Guidelines range is above the applicable state maximum, (4) whether the case is subject to federal prosecution exclusively in the forum state, (5) whether there are any particularized federal interests in the case, and (6) whether there is an applicable federal statutory minimum sentence. Id. at 767. He further suggested that departure was most appropriate when the guideline minimum exceeded the state statutory maximum. Id. at 768-69. Under Wisconsin law, simple possession of child pornography is a Class I felony, Wis. Stat. § 948.12, punishable by imprisonment not to exceed three years and six months, Wis. Stat. § 939.50(3)(i). Distribution or importation of child pornography is a Class F felony, Wis. Stat. § 948.05(1m), punishable by imprisonment of up to twelve years and six months, Wis. Stat. § 939.50(3)(f). Thus, it appears that state law would have permitted a sentence within the guideline range in the present case.

release term allowed by statute given his treatment needs and the need to monitor him to protect the public. In addition to the standard conditions, I imposed conditions on contact with children and use of computers. I further required that he continue in sex offender mental health treatment, including the use of a polygraph to ensure compliance, and waive all rights to confidentiality regarding such treatment in order to allow the release of information to the supervising probation officer. Other conditions appear in the judgment.

**SO ORDERED.**

Dated at Milwaukee, Wisconsin, this 3rd day of February, 2006.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge